# In the United States Court of Federal Claims
No. 11-449 C
(Filed August 8, 2013)

| | |
|---|---|
| KOFAX, INC., | ) |
|                 Plaintiff, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
|                 Defendant. | ) |
| | ) |

## ORDER

This order addresses defendant's motion for summary judgment, plaintiff's opposition thereto and defendant's reply. (ECF Nos. 21 (Mot.), 27-30 (Opp'n), 32 (Reply).)

## FACTS

In an Amended Complaint (ECF No. 9) plaintiff, Kofax, Inc., pursuant to 28 U.S.C. § 1498(b), seeks to recover monetary damages for copyright infringement by the United States. The asserted copyright infringement occurred during a Central Intelligence Agency (CIA) project involving contracting for a system which would enable CIA to digitize a very substantial backlog of its human resources documents.

Kofax develops information capture software which it licenses, installs, supports and maintains. (Am. Compl. ¶ 6, ECF No. 9; Def.'s Answer ¶ 6, ECF No. 11.) The Kofax software involved in the instant copyright infringement claim are Ascent Capture (Ascent) and Indicius Advanced Capture Suite (Indicius). (*Id.*) This software was registered with the United States Copyright Office. (Am. Compl. ¶ 8, ECF No. 9; Def.'s Answer ¶ 8, ECF No. 11; Mot. 4, 5, ECF No. 21.)

Sometime early in the summer of 2006, a CIA official contacted Gary Randall Blevins, Chief Operating Officer and Executive Vice President of EDAC Systems, Inc. (EDAC) to discuss EDAC submitting a proposal to provide the infrastructure to meet CIA's "HR Conversion Project requirements." (Opp'n, Ex. 2 (Blevins' Dep.),

PA0018-23, ECF No. 28-1.)  EDAC was an authorized reseller of Kofax software whose obligations and duties in this respect were governed by a Reseller Agreement with Kofax.  (Opp'n, Ex. 3, PA0088-94, ECF No. 27-3.)  The Kofax-EDAC Reseller Agreement in its part 4, "Licensing Customers," provided (in part):

> Software is available by license from Licensor [Kofax], which license may be resold by Reseller [EDAC].  Such Software and Documentation, including an end user license, shall be delivered to the end user or to such other location as shall be specified by the Reseller….  All purchase orders submitted to Licensor by reseller shall be subject solely to the terms of this agreement, and any preprinted terms on any purchase order form used for convenience of Reseller shall not alter or amend the terms of this Agreement.  All such orders are subject to written acceptance by Licensor, which acceptance shall reference the terms of this Agreement.

(*Id*. at PA0088-89.)

Part 25 of the Kofax-EDAC Reseller Agreement provided, "[i]t is understood that Reseller is an independent contractor and not an agent, partner or joint venturer of Licensor and may not bind or incur any obligation or liability on behalf of Licensor in any manner whatsoever."  (*Id*. at PA0093.)  Part 26 of the Kofax-EDAC Agreement provided that it "shall be construed and interpreted in accordance with the laws of the State of California without giving effect to California's conflicts of laws principles thereof."  (*Id*.)

Shortly after the initial discussions with CIA concerning submitting a proposal, during the period of June-July 2006, EDAC (Mr. Blevins) contacted Mr. Nick Caruso of Kofax concerning pricing for licensing the Kofax software required for the proposal EDAC would submit to the CIA.  (*Id*., Ex. 2 (Blevins' Dep.), PA0026-27, ECF No. 28-1.)  EDAC considered Kofax's initial $2.2M price quote to perpetually license the selected software to be excessive.  (*Id*., Ex. 4, PA0105, ECF No. 27-4.)  Mr. Caruso suggested that instead of a perpetual license for selected software, a substantial price discount could be offered by providing a special project license limited to a 2-year term, approximating the anticipated duration of the CIA's HR conversion project.  (*Id*., Ex. 2 (Blevins' Dep.), PA0031-36, ECF No. 28-1; Ex. 7, PA0122, ECF No. 29-2.)

Plaintiff in its Opposition Brief (Opp'n 5-8, ECF No. 27), with supporting exhibits (ECF Nos. 27-30), details negotiations which transpired over some six

months between Kofax and EDAC concerning the pricing of licenses for software selected for its proposal to CIA and the information provided to CIA in this respect. In March of 2007, the CIA officials involved obtained approval to enter into a contract with EDAC without full and open competition. (*Id*. Ex. 5, PA0107, ECF No. 27-5.) On March 29, 2007, EDAC sent Kofax its purchase order No. 22487 for the Kofax software selected for the CIA HR conversion project (*Id*., Ex. 2 (Blevins' Dep.), PA0069-72, ECF No. 28-1; Ex. 19, PA0222, ECF No. 30-4.) For the Ascent and Indicius Software, EDAC's Purchase Order noted "[e]xpires in 2.5 [y]ears" on each listed item. (*Id*., ECF No. 30-4.)

On March 30, 2007, Kofax issued Invoice No. 247370 and shipped the software described on the invoice to EDAC. (Opp'n, Ex. 2 (Blevins' Dep.), PA0073-79, ECF No. 28-1; Ex. 20, PA0224, ECF No. 30-5.) The Kofax invoice does not match the items listed on EDAC's Purchase Order and the shipped items were, apparently, different versions of the software. The Kofax invoice contains no mention of license term limits for these different versions of software. The deposition testimony is confusing. Mr Blevins testified that the "[e]xpires in 2.5 [y]ears" notations in the EDAC purchase order were in error as "it was meant to calculate 300 million images or plus." (*Id*., Ex. 2, PA0072, ECF No. 28-1.) That is, the license limits were in the number of images scanned, not the time involved. Mr. Blevins further testified:

> Q   And when you saw it and you saw that expires in two and a half years, did you say anything to Diane about how you need to change that?
>
> A   Absolutely, until we got the invoice, and then it became a moot point because they billed us as perpetual licenses for everything, and they changed the part numbers and the product on 11 of the 17 items that were on their invoice.

(*Id*. at PA0073.)

As for the different product shipped by Kofax, Mr. Blevins testified:

> Q   When they shipped the wrong product, did you call them?
>
> A   Nick called me. I was on the road. He called me on my cell phone, as I recall. We are going back now, you know, five or six years. I don't remember where I was other than he did call me to let me know that he was changing the configuration, and he just wanted to let me

> know, because I was not in the office to authorize that or anything like that, and once he told me what he was doing, I was fine with it because there was no limitations in terms of the license. We agreed that it was going to be for the length of the HR project, but that was it.

(*Id*. at PA0077.)

EDAC paid Kofax's $570,234.00 invoice in full. (Opp'n Ex. 20, PA0224-25, ECF No. 30-5.) The shipment of software covered by Kofax invoice No. 247370 also included Kofax's End User License Agreement (EULA). (Def.'s Answer ¶13, ECF No. 11.) The actual physical installation of the software at the CIA was accomplished by a combination of EDAC and Kofax personnel with the majority of the development, programming, and configuration performed by Nick Caruso of Kofax. (Opp'n, Ex. 2 (Blevins' Dep.), PA0056-57, ECF No. 28-1.) The United States procured the licenses for the installed Ascent and Indicius software from EDAC as a reseller of the Kofax software and accepted the terms of the EULA that accompanied this software. (Def.'s Answer ¶¶ 9, 13, ECF No. 11.)

Paragraphs 1(a), 3, 4, 13(b),(f) of the EULA state:

1. Software License.

(a) License Grant. Under the terms and conditions of this Agreement, Kofax Image Products, Inc. ("Kofax") grants You a non-exclusive, personal, non-transferable, non-sublicensable right to install the enclosed software program, in object code form only (the "Software") on Your networked or standalone computers for access and use by the quantity of users ("Seats") specified on the applicable invoice. Installation on a network server for the sole purpose of your internal distribution of the Software is permitted only if you have purchased an individual Software license for each networked computer to which the Software is distributed. Use of the Software at or by more than the specified number of concurrent Seats is expressly prohibited. Additional Seats may be available for additional license fees. This Agreement does not convey to You an interest in or to the Software, but only a limited right of use revocable in accordance with the terms of this Agreement.…

3. Ownership. No title to or ownership in the Software is transferred to You. You acknowledge and agree that Kofax and its suppliers (including but not limited to, Adobe Systems, Inc. and OmniPlanar) own and retains all rights, title and interest in the Software and ownership of all intellectual property rights in the Software, including any adaptations or copies. You acquire only a license to use the Software.

> The Software is the proprietary product of Kofax and/or its suppliers and is protected by the United States copyright laws and international provisions. You must treat the Software as any other copyrighted material with the exception that (a) You may make a single copy of the Software in non-printed machine-readable form for each Seat licensed, and (b) You may make a single copy of the Software solely for back-up or archival purposes. You agree not to attempt in any way to obliterate or destroy the trade secret or copyright notice in all copies of the Software. You may produce and maintain a number of copies of the documentation that correspond the number of Seats licensed, but you may not distribute, post or otherwise make such documentation available to third parties without the express written permission of Kofax. You may not use, copy, modify, or transfer the Software or any documentation accompanying this Software except as expressly provided in this Agreement. You agree to keep a written record of all installations and copies of the Software made and the disposition thereof, and to furnish a copy of such record to Kofax upon request. Such records must be maintained for a period of three (3) years from the date of creation.
>
> 4. Term. This license is effective until terminated. You may terminate it by destroying the Software and accompanying documentation and all copies thereof. This license will also terminate if You fail to comply with any term or provision of this Agreement. You agree upon such termination to destroy the Software and accompanying documentation and all copies thereof.
>
> 13. Miscellaneous.…
>
> (b) Governing Law. The validity and performance of this Agreement shall be governed by California law (without reference to choice of law principles) and applicable federal law. The United Nations Convention on Contracts for the International Sale of Goods shall not apply.…
>
> (f) Entire Agreement; Modification. This Agreement sets forth the entire understanding and agreement between You and Kofax and may be amended only in a writing signed by both parties.

(Am. Compl., Ex. 5, ECF No. 9-5.)

The EULA accompanying the Kofax software at issue concludes with the following statement at the bottom of its final page:

> YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTAND IT AND AGREE TO BE BOUND BY ITS TERMS AND CONDITIONS. YOU FURTHER AGREE THAT IT IS THE COMPLETE AND

EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND KOFAX REGARDING THE SOFTWARE, WHICH SUPERSEDES ANY PROPOSAL OR PRIOR AGREEMENT OR ADDITIONAL LICENSE TEXT ACCOMPANYING THE SOFTWARE ORAL OR WRITTEN, AND ANY OTHER COMMUNICATIONS BETWEEN YOU AND KOFAX RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT.

(*Id*.)

## **DISCUSSION**

Plaintiff claims that the CIA procured 2.5-year term special project licenses for Kofax Ascent and Indicius software and infringed Kofax's copyright by continuing to use this software after the 2.5-year license term that was procured had expired.

Defendant moves for summary judgment based on the EULA accompanying the software that CIA procured. The EULA contains, in paragraph 13(f), an integration clause stating, "[t]his Agreement sets forth the entire understanding and agreement between you and Kofax and may be amended only in writing signed by both parties." (Am. Compl., Ex. 5, ECF No. 9-5.) The only reference to license terms in the EULA is contained in its paragraph 4 which reads, "[t]his license is effective until terminated." (*Id*.) Defendant asserts that this text unambiguously describes a perpetual license, and the integration clause serves to establish the document is fully integrated thus precluding the introduction of evidence, extrinsic to the EULA, such as Kofax-EDAC license negotiations, to otherwise interpret the license term. *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1328 (Fed. Cir. 2003).

Plaintiff takes issue with defendant's assertion that the EULA comprises a fully integrated agreement, noting that the EULA does not mention: "(1) who is purchasing software programs from Kofax; (2) what software was purchased; (3) how many licenses were provided; (4) what price would be paid; or (5) where or when the software would be delivered for use." (Opp'n 25, ECF No. 27.)

The presence of an integration clause raises a strong presumption the contract is a fully integrated agreement unless, as in the present circumstance, the document is obviously incomplete. *Rumsfeld*, 329 F.3d at 1328-29. Parol evidence "must be admissible on the issue of the extent to which a written agreement is integrated for, … the writing cannot prove its own integration." *Sylvania Elec. Prods. v. United States*, 198 Ct. Cl. 106, 128, 458 F.2d 994, 1006 (1972). Extrinsic evidence as to the

license purchase is crucial to complete the agreement reached.  Other provisions which are mandatory for federal government procurements would also be included. *G. L. Christian and Assocs. v. United States*, 160 Ct. Cl. 1, 312 F.2d 418 (1963), *reh'g denied*, 160 Ct. Cl. 58, 320 F.2d 345 (1963), *cert. denied*, 375 U. S. 954 (1963).

Plaintiff also takes issue with defendant's assertion that EULA's paragraph 4 text, "[this license] is effective until terminated," establishes a perpetual license. Plaintiff argues that a perpetual license requires the use of the term "perpetual." (Opp'n 27, ECF No. 27.)

Upon careful consideration of the extensive briefs submitted by the parties, it is concluded that contrary to its integration clause, the EULA which accompanied the software at issue is not a fully integrated agreement.  The EULA is obviously incomplete, particularly with respect to the purchase of the Kofax licenses including the price paid and what relationship the purchase price paid had with respect to the scope of the Kofax licenses procured.  Purchase of a term limited license for use of the software at issue, were that to be established, would in no way be in conflict with paragraph four of the EULA which accompanied the software as any such license would be effective, unless terminated during the term purchased and the license would expire by its own terms at the conclusion of the use purchased.  Therefore, paragraph four of the EULA accompanying the software can be applied whether the Kofax license purchased is for a limited term or in perpetuity, and does not serve to create solely a perpetual license independent of the procurement transaction which is missing from the document.

The parties agree that the CIA procured the Kofax licenses from EDAC, a then authorized Kofax license reseller.  (Def.'s Answer ¶ 9, ECF No. 11.)  EDAC negotiated pricing and paid Kofax for the licenses it then sold to the CIA. (Opp'n 9-10, ECF No. 27; Ex. 2 (Blevins' Dep.), ECF No. 28-1.)  EDAC could resell and convey to the CIA only the licenses for which it had paid Kofax and acquired for the installation and use of software under its sole source contract with the CIA to provide the infrastructure for digitizing a large backlog of HR records.  Thus, if EDAC purchased a limited license from Kofax, it could resell only what it acquired, not a perpetual license.  *Rhone Poulene Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002). However, if EDAC purchased a perpetual license from Kofax, if could resell the perpetual license.  *Id*.

From the facts asserted by the parties in their comprehensive briefs and supporting exhibits, as discussed earlier, there emerge genuine and material issues of fact with respect to the scope of the licenses purchased by EDAC from Kofax and then resold to CIA. From the testimony and documents presented, the scope of the relevant licenses EDAC obtained and resold for the software involved could be limited to a 2.5-year term, or limited to the duration of the CIA HR records project, or limited as to the number of images to be taken[1], or not be limited at all, *i.e.*, be perpetual.

## CONCLUSION

It having been determined that the EULA accompanying the relevant Kofax software procured by the CIA is compatible with either limited or perpetual licenses, and that there exist genuine and material issues of fact concerning the scope of the relevant Kofax software licenses procured by the CIA from EDAC, as an authorized Kofax reseller, the requirements for summary judgment pursuant to RCFC 56(a) have not been met. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Accordingly, it is **ORDERED** that defendant's motion for summary judgment (ECF No. 21) is **DENIED**.

s/ James F. Merow
James F. Merow
Senior Judge

---

[1] Kofax distributed a "dongle" with its products that connects to a server and counts images. (Opp'n, Ex. 2 (Blevins' Dep.), PA0029, ECF No. 28-1.)